## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| United States Securities and Exchange Commission, | Case No. 21-cv-2114 (KMM/JFD) |
| Plaintiff, | |
| v. | **ORDER** |
| Carebourn Capital, L.P.; Carebourn Partners, LLC, *Relief Defendant*, and Chip Alvin Rice; | |
| Defendants. | |

The United States Securities and Exchange Commission ("SEC") brought this action alleging that Defendants Chip Alvin Rice and Carebourn Capital, L.P. (collectively "the Carebourn Defendants"), bought and sold newly issued shares of microcap securities, but failed to comply with mandatory dealer registration requirements of the Securities and Exchange Act of 1934. The SEC further asserts that the investments Mr. Rice and Carebourn L.P. received were transferred to Carebourn Partners, LLC, which should be required to disgorge the funds it obtained from such unregistered dealer activity. The Carebourn Defendants assert that they are not liable because they did not purchase or sell securities on the public market in the regular course of business, did not hold themselves out as being registered broker-dealers, and never offered investment advice to third parties or solicited the sale or purchase of securities to third parties.

In the answer to the SEC's complaint, the Carebourn Defendants asserted the following affirmative defenses, among others:

### SECOND AFFIRMATIVE DEFENSE

The Complaint is barred by due process, in whole or part, where Defendant had no fair notice that his conduct could be unlawful.

### THIRD AFFIRMATIVE DEFENSE

The Complaint is estopped, in whole or in part, from asserting claims inconsistent with the SEC's own published guidance and no-action letters.

….

### TENTH AFFIRMATIVE DEFENSE

The SEC's action in this matter has been tainted by misconduct of its agents.

[Ans. 9–10, ECF No. 21].[1] The SEC moves to strike these affirmative defenses from the Carebourn Defendants' answer pursuant to Federal Rule of Civil Procedure 12(f). [Pl.'s Mot. to Strike, ECF No. 24]. For the reasons that follow, the SEC's motion is granted in part and denied in part.

## I.    Legal Standards

Federal Rule of Civil Procedure 8(c) requires a party responding to a pleading to "affirmatively state any . . . affirmative defense." Under Rule 12, a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous

---

[1] Although the SEC's memorandum asserts that Carebourn improperly included defenses that technically do not qualify as affirmative defenses in their answer, the SEC clarified that it is not seeking to have those defenses stricken because doing so would serve no real purpose. [SEC's Mem. at 3 n.1, ECF No. 26].

matter . . . on its own . . . or . . . on motion made by a party." Fed. R. Civ. P. 12(f). Striking a pleading is a discretionary decision, but it is often described as a "disfavored" remedy. *E.g.*, *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8t h Cir. 2007); *Stanbury Law Firm v. Internal Revenue Serv.*, 221 F.3d 1059, 1063 (8th Cir. 2000).

"A motion to strike should be granted 'if the result is to make a trial less complicated or otherwise streamline the ultimate resolution of the action.'" *Bjornson v. Soo Line R. Co.*, No. 14-cv-4596 (JRT/SER), 2015 WL 5009349, at*3 (D. Minn. Aug. 24, 2015) (quoting *Daigle v. Ford Motor Co.*, 713 F. Supp. 2d 822, 830 (D. Minn. 2010)). "A court may strike a defense as legally insufficient if the defense asserted is foreclosed by prior controlling decisions or statutes." *Nadeau v. Experian Info. Sols, Inc.*, No. 20-cv-1841 (PJS/TNL), 2020 WL 7396588, at *5 (D. Minn. Dec. 17, 2020) (internal quotation omitted). But if a defense is sufficient, as a matter of law, or presents a factual or legal question the court should hear, the motion should be denied. *Lunsford v. United States*, 570 F.2d 221, 229 (8th Cir. 1977). In the absence of controlling precedent or statutory authority, "a defense will not be stricken as legally insufficient." *Bjornson*, 2015 WL 5009349, at *3.

## II.   Analysis

The SEC asserts that the Carebourn Defendants' Second, Third, and Tenth Affirmative Defenses should be stricken because (1) they are legally insufficient, and (2) even if they were legally sufficient, the Carebourn Defendants failed to plead supporting facts sufficient to satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). As explained below, the SEC has not persuaded the Court that any of the challenged affirmative defenses are subject to Rule 9(b)'s pleading requirements, so the motion is denied

on that basis. Nor has the SEC shown that these defenses are foreclosed by prior controlling decisions or statutes. However, striking the Carebourn Defendants' Tenth Affirmative Defense, which contends that misconduct by the SEC's counsel bars this enforcement action, will streamline the ultimate resolution of this action.

### A.    Second Affirmative Defense – Due Process

First, the Court addresses the SEC's argument that the Court should strike Carebourn Defendants' Second Affirmative Defense, alleging that the SEC's dealer-registration claims violate their due process rights. The SEC takes the position that the Carebourn Defendants were required (but failed) to plead this defense with the particularity demanded by Federal Rule of Civil Procedure 9(b). The SEC also argues that the due process defense is legally insufficient.

#### 1.    Rule 9(b) and Affirmative Defenses

Under Rule 8 a party "must affirmatively state any avoidance or affirmative defense, including," among others, estoppel and fraud. Fed. R. Civ. P. 8(c). Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Typically, an affirmative defense pled "in general terms . . . will be held to be sufficient and therefore invulnerable to a motion to strike,"[2] but there is an exception for

---

[2] There is a "split among district courts, both within and outside the Eighth Circuit, regarding whether the plausibility standard established in *Twombly* and *Iqbal* applies to affirmative defenses." *Acosta v. Luxury Floors, Inc.*, 2018 WL 7350478, at *2 (D. Minn. Dec. 7, 2018) (quoting *Summers Mfg. Co., Inc. v. Tri-City AG, LLC*, 300 F. Supp. 3d 1025, 1043 (S.D. Iowa 2017)). "District courts in this District have also split on this issue." *Id.* (comparing *Wells Fargo & Co. v. United States*, 750 F. Supp. 2d 1049, 1051 (D. Minn. 2010), and *Ahle v. Veracity Research Co.*, 738 F. Supp. 2d 896, 925 (D. Minn. 2010)). The Court need not decide this issue to resolve the SEC's motion to strike.

"defenses that fall within the special pleading provisions in Federal Rule of Civil Procedure 9, especially Rule 9(b)…." 5A Charles A. Wright & Arthur R. Miller, *Fed. Prac. & Procedure*, § 1274 – Pleading Affirmative Defenses (4th ed., Oct. 2021 Update). Several courts have applied Rule 9(b) to pleadings asserting an affirmative defense of fraud. *E.g.*, *Plante & Moran, PLLC v. Andover Healthcare, Inc.*, No. 17-cv-10093-DJC, 2018 WL 935423, at *7 (D. Mass. Feb. 16, 2018) ("Rule 9(b) applies to all averments of fraud or mistake including affirmative defenses." (cleaned up)); *Sousie v. Allstate Indem. Co.*, No. C17-5078 BHS, 2017 WL 1711044, at *2 (W.D. Wash. May 3, 2017) ("Although neither party has provided binding authority for the proposition that an affirmative defense of fraud must be plead with particularity, the weight of authority suggests that such a defense must comply with Federal Rule of Civil Procedure 9(b).").

Ultimately, the question in determining whether any of the challenged defenses alleged in this case are subject to Rule 9(b)'s requirement is whether they allege conduct by the SEC that is akin to fraud.[3] Although "[t]he distinction between what counts as fraud and what does not for purposes of Rule 9(b) is far from clear,"[4] nothing in the record suggests that the Second Affirmative Defense alleging a due process violation is based upon fraud. The SEC cites no authority to suggest that this defense is governed by Rule 9(b)'s pleading

---

[3] The SEC does not argue that any of the affirmative defenses at issue must comply with Rule 9(b) because they are alleging "mistake." The Court discusses the SEC's arguments that the Third and Tenth Affirmative Defenses must be alleged with particularity in more detail below.

[4] 5A Wright & Miller, § 1297 – Pleading Fraud with Particularity – in General (cleaned up).

requirements. Accordingly, the Court declines to strike the Second Affirmative Defense on this basis.

### 2. Legal Sufficiency

The SEC points to several decisions in support of its argument that a due process defense is not available when it is premised on the absence of the SEC's guidance on how to comply with a securities statute. *See, e.g.*, *S.E.C. v. River North Equity LLC*, 415 F. Supp. 3d 853, 859 (N.D. Ill. 2019) (rejecting the defendants' argument that allowing the SEC's unregistered-dealer claims to go forward would violate their due process rights based on the breadth of the statutory definition and absence of SEC guidance on its interpretation of the statute); *Sec. & Exch. Comm'n v. Falstaff Brewing Corp.*, No. 77-894, 1978 WL 1120, at *28 (D.D.C. Oct. 28, 1978) ("The defendants do not have the right to rely on the Commission's assistance to tell them how to comply with the securities laws, nor can they successfully assert the absence of such assistance as a defense.").[5]

The Court finds that although the SEC has persuasively argued that this defense is extremely narrow and quite difficult for a defendant to establish, the SEC has not cited, and this Court's own research has not revealed, any controlling authority foreclosing a due process defense as a matter of law. Accordingly, the Court will not strike the Defendants' Second Affirmative Defense as legally insufficient.

---

[5] *See also Sec. & Exch. Comm'n v. Fife, et al.*, No. 20-cv-5226, 2021 WL 59985825 (N.D. Ill. Dec. 20, 2021) (rejecting the defendants' due process argument that the SEC's interpretation of "dealer" in the Securities and Exchange Act failed to provide them fair notice of the standards by which their conduct would be judged); *Sec. & Exch. Comm'n v. Fierro*, No. 20-cv-2104, 2020 WL 7481773, at *5 (D.N.J. Dec. 18, 2020) (same); *Sec. & Exch. Comm'n v. Keener*, No. 20-cv-21254, 2020 WL 4736205, at *5 (S.D. Fla. Aug. 14, 2020) (same).

### B.    Third Affirmative Defense – Estoppel

For the same reasons that the Court declines to strike the Second Affirmative

Defense (due process), the Court will not strike the Third Affirmative Defense, which

advances a theory of estoppel.

Again, the SEC has failed to show that Rule 9(b)'s heightened pleading requirements

are implicated by the Defendants' assertion of an estoppel defense. The Third Affirmative

Defense is not based on anything that approaches an allegation of fraud. The estoppel

defense hinges on whether the SEC's own decisions and guidance regarding registration

requirements prohibit the SEC from enforcing its rules and regulations in this litigation. This

does not suggest that the SEC (or anyone else) made a misrepresentation that induced the

Carebourn Defendants' reasonable, detrimental reliance. Accordingly, the Court concludes

that the Third Affirmative Defense should not be stricken for failure to comply with Rule

9(b).

The SEC has also not demonstrated that an estoppel defense akin to that asserted by

the Defendants in their answer is legally unavailable. The SEC cites case law indicating that,

although it has been entertained in rare circumstances, estoppel is generally not available as a

defense against the government. *See, e.g.*, *Harding Cnty., S.D. v. Frithiof*, 575 F.3d 767, 777 (8th

Cir. 2009) (noting that "estoppel should be used sparingly against public entities" but

affirming the district court's conclusion that a county was estopped from rescinding a lease);

*Gibson v. West*, 201 F.3d 990, 994 (7th Cir. 2000) (explaining that "equitable estoppel against

the government is disfavored and is rarely successful" and providing a list of the elements

required to invoke estoppel against a government entity, including "affirmative

misconduct"). While these cases reveal that a government entity's claims may only be estopped in very rare circumstances, they undermine the suggestion that the defense is unavailable as a matter of law. Accordingly, the SEC's motion to strike the estoppel defense is denied.

### C.    Tenth Affirmative Defense – Unclean Hands

#### 1.  Pleading Sufficiency

As with the other affirmative defenses, the SEC suggests that the Tenth Affirmative Defense was required to be alleged with particularity under Rule 9(b). In support of this argument the SEC relies primarily on *Imation Corp. v. Koninklijke Philips Elecs. N.V.*, No. 07-cv-3668, 2009 WL 10678800 (D. Minn. May 21, 2009) and *Cynergy Ergonomics, Inc. v. Ergonomic Partners, Inc.*, No. 4:08-cv-243 (JCH), 2008 WL 2817106 (E.D. Mo. July 21, 2008). Neither case supports the SEC's position.

The *Imation Corp.* court applied Rule 9(b) to the pleading of an inequitable-conduct defense, 2009 WL 10678800, at *3, but courts have routinely held that such claims and defenses must comply with Rule 9(b)'s pleading requirements in patent litigation. *See Theranese, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1304–05 (Fed. Cir. 2011) (explaining that the Federal Circuit's decision in *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326–29 (Fed. Cir. 2009) requires the pleading of inequitable conduct claims to comply with Rule 9(b)); *Petedge, Inc. v. Fortress Secure Sols.*, No. 15-11988-FDS, 2016 WL 407065, at *4 (D. Mass. 2016) (striking inequitable-conduct defense because it did not allege the "'who, what, when, where, and how' of the material misrepresentation or omission committed before the

PTO" and therefore did not comply with *Exergen*). This case is not a patent case, so *Imation Corp*'s holding is unhelpful to the SEC.

The SEC's reliance on *Cynergy Ergonomics* is no more persuasive. The *Cynergy Ergonomics* court struck the defendants' unclean-hands and inequitable-conduct defenses from a copyright suit for failure to comply with Rule 9(b). However, the court explicitly found that these defenses were based on allegations "that Plaintiff engaged in fraudulent behavior." *Cynergy Ergonomics*, 2008 WL 2817106, at *5. This conclusion is consistent with the language of the Rule, which requires a party to meet a heightened pleading standard "when alleging fraud or mistake." Fed. R. Civ. P. 9(b).

This leaves the question whether the Tenth Affirmative Defense is, in fact, an allegation of fraud. The Carebourn Defendants' answer itself is quite circumspect with respect to the basis for this defense. It states only that the SEC's "action in this matter has been tainted by misconduct of its agents." But while "misconduct" certainly can involve fraud, fraud is not the only form of misconduct.

The Carebourn Defendants shed some light on the basis for the Tenth Affirmative Defense in their briefing and the exhibits attached to their response to the SEC's motion to strike. For example, the Carebourn Defendants state:

> The SEC initiated this action at the behest of a private party, an issuer by the name of Darkpulse, Inc. ("Darkpulse"), who is currently litigating against Carebourn, a Darkpulse investor, in Minnesota State Court. In 2018, Carebourn gave Darkpulse money in exchange for convertible promissory notes ("Notes") that gave Carebourn the right to receive repayment in shares after the Notes' maturity date. (Ex. B). In 2019, Darkpulse's CEO, Dennis O'Leary, personally and repeatedly contacted the lead counsel for the SEC in this case, to initiate an action against Carebourn so that Darkpulse could escape its contractual obligations to Carebourn. (Ex. C). In essence, Carebourn's position is that the SEC did not initiate this action to protect the

> public interest, but to benefit Darkpulse, which defies the SEC's purpose according to law. In none of the cases cited by the SEC, did the SEC work in tandem with an unscrupulous issuer to take down an investor that the issuer wanted to swindle. (Ex. D). Therefore, the Court should deny the SEC's motion to strike Carebourn's affirmative defense of unclean hands, because the facts show that the SEC did not bring this action for the purpose of protecting the investing public; but to assist a private party in eluding their contractual obligations to Carebourn.

[Def.'s Mem. at 7–8, ECF No. 33].

Even with this more detailed explanation of the alleged misconduct, there is no indication of an affirmative misrepresentation by any government official, or anyone else for that matter. The SEC has not explained how this defense constitutes an allegation of fraud that would be subject to Rule 9(b). Based on the record before it, the Court cannot find that the Tenth Affirmative Defense involves an allegation of fraud. Consequently, the SEC's motion is denied to the extent it asks the Court to strike the Tenth Affirmative Defense for failure to comply with Rule 9(b).

## 2. Legal Sufficiency

Next, the SEC argues that the Tenth Affirmative Defense is legally insufficient. The SEC likens the Tenth Affirmative Defense to a defense of unclean hands and points to cases where courts have rejected unclean-hands defenses when they are asserted against a government entity. *See, e.g.*, *U.S. Commodity Futures Trading Comm'n v. Kraft Foods Grp., Inc.*, 195 F. Supp. 3d 996, 1009 (N.D. Ill. 2016) (noting that "courts frequently grant government motions to strike unclean hands affirmative defenses"); *U.S. Commodity Futures Trading Comm'n v. U.S. Bank, N.A.*, 2014 WL 6474183, at *32–36 (N.D. Iowa Nov. 19, 2014) (examining caselaw from various jurisdictions reaching different conclusions, noting that there is no controlling precedent within the Eighth Circuit, and concluding at summary

judgment that "an affirmative defense of unclean hands is unavailable against the
government in an enforcement action in the public interest"); *see also EEOC v. Hibbing
Taconite Co.*, 266 F.R.D. 260, 270 (D. Minn. 2009) (declining to "determine whether a defense
of unclean hands should be unavailable, as a matter of law, against the EEOC in its public
capacity" because the defendant's allegations did not allege that the EEOC "acted in bad
faith, or inequitably, in its dealings" with the company as would be required even if the
defense were legally available); *United States ex rel. Zissler v. Regents of the Univ. of Minn.*, 992 F.
Supp. 1097, 1113–14 (D. Minn. 1998) (declining to exercise its discretion to bar the
government's claims based on unclean hands because the summary judgment record did not
show that the government's awareness of the conduct and failure to take prior action
"constitute[d] a 'willful act concerning the cause of action which rightfully can be said to
transgress equitable standards'" (quoting *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*,
324 U.S. 806, 815 (1945))).

Though some of the authority in this area suggests that an unclean hands defense can
never bar a government entity from enforcing congressionally enacted public policy, none of
those cases is binding precedent. *Bjornson*, 2015 WL 5009349, at *4 (declining to strike an
affirmative defense as legally insufficient where the "Eighth Circuit would be free to disagree
with the other Circuits" that had addressed the issue). Like the other two defenses discussed
above, the SEC has not cited to and the Court is not aware of controlling precedent that
absolutely forecloses any sort of unclean-hands defense against the government as a matter
of law. Accordingly, the SEC's motion is denied in part to the extent it contends otherwise.

### 3.  Discretion

Although the Court concludes that the Tenth Affirmative Defenses should not be stricken for failure to comply with Rule 9(b) or because it is legally insufficient in every instance, the Court nevertheless grants the SEC's motion to strike this defense in this case. The Tenth Affirmative Defense raises a challenge that will unnecessarily complicate these proceedings. This is especially true given that the factual basis articulated in the Carebourn Defendants' response to the motion would not meet the unclean-hands standard even if it were proven to be true. *United States ex rel. Zissler*, 992 F. Supp. at 1113–14.

The Carebourn Defendants essentially complain that the SEC's counsel received information about them from the CEO of a penny stock issuer, Darkpulse, from which the Carebourn Defendants purchased a convertible debt promissory note. The Carebourn Defendants are actively litigating against Darkpulse and its CEO and allege that Carebourn was swindled in their transaction. They suggest that Darkpulse and its CEO acted unscrupulously, but they make only the most conclusory assertions regarding the conduct of the SEC and its agents. The Carebourn Defendants allege that Darkpulse "worked in tandem" with the SEC's counsel "to take down" the Carebourn Defendants and that "the facts show that the SEC did not bring this action for the purpose of protecting the investing public; but to assist a private party in eluding their contractual obligations to Carebourn." [Def.'s Mem. at 7–8]. But the Carebourn Defendants have pointed to no facts or any other reason to believe that the SEC's counsel engaged in any misconduct or that any other government agent has acted in bad faith in bringing this enforcement action. *See Hibbing Taconite Co.*, 266 F.R.D. at 270 (indicating that a party seeking to rely on an unclean-hands

12

defense against a government entity must show that the agency "acted in bad faith, or inequitably, in its dealings" with that party). It is clear that the Carebourn Defendants' assertion of government-agent misconduct tainting these proceedings would not satisfy an unclean-hands defense even where such a defense has been recognized against the government, and even assuming that the factual narrative contained in the briefing had been pled in the answer.

Moreover, the Court finds that striking the Tenth Affirmative Defense will streamline the litigation and prevent a considerable waste of time and resources, and the SEC's motion is granted on that basis. *Bjornson*, 2015 WL 5009349, at *3 ("A motion to strike should be granted if the result is to make a trial less complicated or otherwise streamline the ultimate resolution of the action." (internal quotation marks omitted)); *Verdignlione v. Mercado Del Rio Prop., LLC*, No. SACV 19-490 JVS (DFMx), 2019 WL 6711700, at *5 (C.D. Cal. June 3, 2019) (striking several affirmative defenses from an action under Title III of the Americans with Disabilities Act and noting that "[p]rohibiting the defendant from asserting factually insufficient affirmative defenses saves time, money, and judicial resources"); *see also* Fed. R. Civ. P. 1 (providing that the Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding").

The Carebourn Defendants suggest that at a minimum they should have a chance to conduct discovery into the communications between the SEC's counsel and Darkpulse personnel and other information related to the defense theory that the SEC brought this case for reasons other than protecting the investing public. Through this argument the

Carebourn Defendants reveal that the Tenth Affirmative Defense is the camel's nose under the tent. As it stands, even if the Carebourn Defendants were to prove up the basis for this defense as articulated in their memorandum, their showing would still be insufficient to establish the defense. The email communications attached to their responsive memorandum present no support for their claim that the investigation in this case is tainted by any misconduct by a government agent. But allowing them to take their proposed discovery by keeping the unclean-hands defense in the litigation would be to embark upon a fishing expedition through an unnecessary investigation into the investigation that would waste the parties' time and money and require the unnecessary expenditure of judicial resources.

Certainly, given the Court's considerable discretion, it could choose to leave the Tenth Affirmative Defense in the case and simply let the litigation process play out. Because the SEC would remain free to seek a protective order if it believes any discovery requests from the defense present an undue burden, such an approach has a certain appeal. But the Carebourn Defendants have offered nothing more than unsupported assertions that the SEC's counsel is merely carrying water for Darkpulse in a tangentially related state-court litigation. In light of that reality, leaving the defense in the litigation would be certain to lead to pointless discovery disputes and nondispositive motion practice, all so that the Carebourn Defendants can spin everyone's wheels while they investigate the SEC's investigation and pursue likely specious accusations against an officer of the court. That would have the opposite effect of streamlining the litigation without any hope that such detours would lead to evidence that might support an unclean-hands defense.

III.    **Order**

As discussed above, the SEC's motion to strike is **GRANTED IN PART** and

**DENIED IN PART**. The motion is granted to the extent that the Tenth Affirmative

Defense is stricken, and in all other respects, the motion is denied.

Date: April 12, 2022

                                                     *s/Katherine Menendez*
                                                     Katherine Menendez
                                                     United States District Judge