| | |
|---|---|
| STATE OF MINNESOTA<br>COUNTY OF HENNEPIN | DISTRICT COURT<br>FOURTH JUDICIAL DISTRICT |

Carebourn Capital, L.P.,

       Plaintiff,

v.

Darkpulse, Inc., Standard Registrar & Transfer Company, Inc.,

       Defendants,

**ORDER ON DARKPULSE INC.'S MOTION FOR SANCTIONS**

Darkpulse, Inc.,      Court File No.: 27-CV-21-1173

       Third-Party Plaintiff,

v.

Chip A. Rice,

       Third-Party Defendant.

More Capital, L.P.,      Court File No.: 27-CV-21-1173

       Plaintiff,

v.

Darkpulse, Inc. and Standard Registrar Transfer Company, Inc.,

       Defendants,

Darkpulse, Inc.,

       Third-Party Plaintiff,

v.

Michael J. Wruck,

       Third-Party Defendant.

This matter came on before the Court on February 9, 2022, on DarkPulse, Inc.'s motion to enforce the protective order and for sanctions.

Lee Hutton, Esq., Kyle Hahn, Esq., and Jason Juran, Esq., appeared for Carebourn Capital, L.P. and More Capital, L.P.

Eric Benzenberg, Esq. and Jason Asmus, Esq., appeared for DarkPulse, Inc.

Based on the pleadings and arguments of counsel, including the entire record and proceedings herein, the Court issues the following Order as follows:

## DISCUSSION

### Background

1.  **Protective Order.** Prior to consolidation of these matters, the Court approved a Stipulated Protective Order ("PO") on August 23, 2021, between Carebourn Capital, L.P. ("Carebourn") and DarkPulse, Inc. ("DarkPulse"). The Protective Order provided a mechanism for a party who discloses or produces a "Protected Document." A "Protected Document" "means a document protected by a privilege or the work-product doctrine." (PO § 1(g).) Section 9 of the PO, "Inadvertent Disclosure or Production to a Party of a Protected Document," provides as follows:

    (a) Notice.

    (1) A party or non-party who discovers that it has inadvertently disclosed or produced a protected document must promptly notify the receiving party and describe the basis of the claim of privilege or protection. If the party or non-party provides such notice and description, the privilege or protection is not waived.

    (2) A party who discovers that it may have received an inadvertently disclosed or produced protected document must promptly notify the disclosing or producing party or non-party.

    (b) Handling of Protected Document. All Parties are specifically afforded the protections of Minnesota Rule of Evidence 502(d) and (e) for any produced document that is or may reasonably be subject to a legally recognizable privilege (Protected Document). The disclosure or production of Protected Document(s) by a producing Party subject to a legally recognized claim of privilege, including without limitation the attorney-client privilege and the work-product doctrine, to a receiving Party, shall in no way constitute the voluntary disclosure of such Protected Document(s), and the inadvertent

disclosure or production of any Protected Document(s) in this action shall not result in the waiver of any privilege, evidentiary protection or other protection associated with such Protected Document(s) as to the receiving Party or any third parties.

If the producing Party determines it has produced Protected Document(s), the producing Party shall notify the receiving Party of such inadvertent production in writing, identifying the basis for the privilege or protection, and demand the return of such documents. The receiving Party shall respond until the issue is resolved by:

(a) Refraining from reading the Protected Document(s);

(b) Returning, sequestering, or destroying all copies and derivative material of such Protected Document(s) (including extracting the Protected Document(s) from databases where possible); and

(c) Taking reasonable steps to retrieve the information if disclosed to any third party(ies).

If a receiving Party determines that any Protected Document has been disclosed, the receiving Party shall immediately notify the producing Party in writing and take the steps set forth in subsections (a) to (c) in the preceding sentence until the issue is resolved. Within 10 days of receiving such notice, the producing Party shall inform the receiving Party in writing of its intent to claim privilege and provide a log for such Protected Document(s). The receiving Party may thereafter seek reproduction of any such documents pursuant to applicable law.

2. **Inadvertent Document Production.** On September 10, 2021, DarkPulse produced approximately 13,600 documents to Carebourn in response to written discovery requests. (Benzenberg Decl. ¶¶ 9-12.) DarkPulse asserts that approximately 2,410 documents that constitute attorney-client privileged communications were inadvertently included in this production. (DarkPulse's Mem. in Supp. of Mtn. to Enforce Protective Order and For Sanctions, 6.) This would constitute almost 18% of the produced documents.

3. To sort through potentially responsive documents to Carebourn's discovery requests, DarkPulse had retained the services of a document-discovery management company, Docusource. (O'Leary Decl. ¶ 7.) Docusource had used instructions from DarkPulse's legal counsel to sort through a larger trove of documents to identify potentially responsive documents. (Benzenberg Decl. ¶¶ 4-5.) DarkPulse represents that it provided two rounds of search terms to Docusource to identify privileged communications to have them separated out from the document production. (*Id.* at ¶¶ 5-7.) DarkPulse asserts that these supplemental search terms and phrases

3

provided to Docusource did not sort out all potentially privileged communications. (*Id.* at ¶ 11.) DarkPulse further blames the time left to respond to the discovery requests for its failure to more thoroughly review the final production before inadvertently producing privileged documents.

4.  **Carebourn's Use and Filing of Privileged Documents.** A little over a month after the September 10, 2021, document production, Carebourn filed with this Court a request for reconsideration of an Order dismissing Defendant Standard Registrar and Transfer Company, Inc., on October 19, 2021. That filing included exhibits which were several correspondences between DarkPulse and counsel. Carebourn acknowledged in its filing that the exhibits included communication with "what is likely legal counsel for both parties [DarkPulse and Standard]." Carebourn took the position that "[p]roduction of these documents … is proof under law that DarkPulse has waived the attorney-client privilege to these documents." (Reconsid. Ltr. at 1.)

5.  **DarkPulse Gives Notice to Carebourn.** In response to Carebourn's filing, DarkPulse's counsel sent notice on the evening of October 19, 2021, to Carebourn that:

> Pursuant to Minn. R. Evid. 502 and Section 9(a)(1) of the Stipulated Protective Orders entered in this matter, you are hereby advised that DarkPulse inadvertently produced attorney-client privileged communications including, but not limited to, Exhibits F, J, K, L, M, N, O, and P attached to your letter. The basis for the claim of privilege, clearly, is that these communications constitute confidential attorney-client privileged communications between DarkPulse and its counsel.
>
> * * * * *
>
> We hereby demand that you immediately take appropriate action to (1) segregate and delete all privileged communications in your possession, as required by Section 9 of the Stipulated Protective Order, and (2) contact the Court to ensure the privileged documents that were improperly publicly filed are sealed to prevent additional public disclosure.

(Benzenberg Decl. Ex. 7.)

6.  To date, Carebourn has declined to comply with DarkPulse's request to segregate and delete the documents at issue. Instead, Carebourn again included disputed documents in a filing in connection with a Reply Memorandum on a dispositive motion made on November 15, 2021. DarkPulse reiterated its demands that the documents be returned, sequestered, and destroyed in a letter to Carebourn on December 16. 2021.

7.  Undeterred, Carebourn included some of the disputed documents in filings made in federal court litigation involving a Securities and Exchange Commission ("SEC") enforcement action against Carebourn. (*SEC v. Carebourn Capital, L.P. et al.*, 21-cv-2114 (KMM/JFD) (D. Minn.)

8.  Further correspondence between DarkPulse and Carebourn led to no progress on resolving the dispute over whether the documents had to be segregated or destroyed by Carebourn. DarkPulse has now brought the following motion to enforce the PO as a result.

Analysis

9. DarkPulse's motion is premised on the position that Carebourn, by its actions, has violated the PO, the PO must be enforced, and Carebourn must be sanctioned as a result.

10. **Violation of the PO.** The Court may issue a protective order as necessary to protect a party from annoyance, embarrassment, oppression, or undue burden or expense. Minn. R. Civ. P. 26.03. Here, the Court approved a stipulated protective order. Section 9 of the PO addressed situations in which (1) the producing party determines that Protected Documents had been produced, and (2) the receiving party realizes that Protected Documents had been produced:

> If the producing Party determines it has produced Protected Document(s), the producing Party shall notify the receiving Party of such inadvertent production in writing, identifying the basis for the privilege or protection, and demand the return of such documents. The receiving Party shall respond until the issue is resolved by:
>
> (a) Refraining from reading the Protected Document(s);
>
> (b) Returning, sequestering, or destroying all copies and derivative material of such Protected Document(s) (including extracting the Protected Document(s) from databases where possible); and
>
> (c) Taking reasonable steps to retrieve the information if disclosed to any third party(ies).
>
> If a receiving Party determines that any Protected Document has been disclosed, the receiving Party shall immediately notify the producing Party in writing and take the steps set forth in subsections (a) to (c) in the preceding sentence until the issue is resolved. Within 10 days of receiving such notice, the producing Party shall inform the receiving Party in writing of its intent to claim privilege and provide a log for such Protected Document(s). The receiving Party may thereafter seek reproduction of any such documents pursuant to applicable law.

11. If the producing party determines it has produced Protected Documents, it must give notice in writing notifying of the inadvertent production, identifying the basis of the privilege, and demanding return. That occurred here in correspondence from DarkPulse to Carebourn dated October 19, 2021. Under the PO, Carebourn was then obligated to refrain from reading the documents any further; returning, sequestering, or destroying all copies; and taking reasonable steps to retrieve information it disclosed to third parties. These steps were agreed to be the required approach until the "issue was resolved."

12. Similarly, Carebourn was required to take the same steps when it determined that any Protected Document had been received. "Protected Document" "means a document protected by a privilege or the work-product doctrine." (PO § 1(g).) Carebourn by its filings of some of the documents at issue with the Court noted in its correspondence that these documents included attorney-client communications. Carebourn's accompany letter for reconsideration indicated that these documents would be attorney-client privileged, but that the production of them by DarkPulse "is proof under law the DarkPulse has waived the attorney-client privilege as to these documents."

13. Carebourn did not perform the agreed-upon tasks called for by the PO. Rather, it has repeatedly filed disputed documents both it and DarkPulse have identified as attorney-client privileged communications. The PO provided a mechanism on how the disclosure of Protected Documents identified by either side was to be handled. It did not provide another option stating that if the receiving party really wanted to use the documents, it could do something else.

14. The PO tries to prevent any further use or disclosure until the "issue was resolved." If Carebourn felt that DarkPulse was abusing the PO falsely clawing back documents not entitled to Protected Document status, it had the opportunity to bring the matter to the Court by seeking an Order from the Court. It had the opportunity to ask the Court to intervene, through means such as an *in camera* review by the Court or a special master to consider whether the documents merited Protected Document status. It could have similarly used this process to ask the Court to determine whether any such Protected Document status had been forfeited by DarkPulse's waiver or mishandling of the documents. Carebourn did not do these things. Instead, Carebourn engaged in self-help, keeping and disseminating the documents. Even if Carebourn had forgotten its obligations under the PO, DarkPulse had put it on notice and reminded it of them.

15. **Sanctions.** DarkPulse asks that the Court impose sanctions on Carebourn in the form of its fees and costs incurred with this motion.

16. The Court has the authority to sanction parties for the "willful disobedience of a protective order." *Greiner v. City of Champlin*, 152 F.3d 787, 789 (8th Cir.1998) (citing *Chambers v. NASCO, Inc.*, 501 U.S. at 32); *See also Palmer, v. 3M Company*, No. C2-04-6309, 2007 WL 2030461 (Minn. Dist. Ct. June 18, 2007) (order and report, and recommendation by special master that transmission of unredacted documents marked confidential to journalists in violation of protective order, was a "serious and sanctionable offense," as the "rush to satisfy the media was apparently of greater importance than conscientious adherence to court orders.").

17. The Court holds inherent authority to protect its "vital function—the disposition of individual cases to deliver remedies for wrongs and justice freely and without purchase; completely and without denial; promptly and without delay, conformable to the laws." *Patton v. Newmar Corp.,* 538 N.W.2d 116, 118 (Minn. 1995) (quotations omitted) (holding that the trial court has inherent authority to impose sanctions for spoilation of evidence). The inherent authority includes the ability to award attorney's fees. *Peterson v. 2004 Ford Crown Victoria*, 792 N.W.2d 454, 462 (Minn. Ct. App. 2010). Attorney's fees may be an appropriate sanction when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 45–46 (1991) (citation omitted). Case law defines bad-faith conduct as the commission of a malicious, willful wrong. *Mjolsness v. Riley*, 524 N.W.2d 528, 530 (Minn. Ct. App. 1994) (citing *Rico v. State,* 472 N.W.2d 100, 107 (Minn. 1991) (bad-faith conduct is the intentional doing of a wrongful act without legal justification or excuse, or the willful violation of a known right); *Elwood v. Rice County,* 423 N.W.2d 671, 677-79 (Minn. 1988) (bad-faith conduct involves not merely erroneous judgment, but rather malicious intent); *Susla v. State,* 247 N.W.2d 907, 912 (Minn. 1976) (bad-faith conduct involves a willful or malicious wrong); *Price v. Sheppard,* 239 N.W.2d 905, 912 (Minn. 1976) (bad-faith conduct involves acting with malice)).

18. Malice can have slightly different meanings, based on the contexts. *See New York Times Co. v. Sullivan,* 376 U.S. 254, 279–80 (1964) ("actual malice" in defamation context is

knowledge that the statements were false or made with reckless disregard of their truth or falsity); *See Rico v. State,* 472 N.W.2d at 100 (malice in official immunity context "means nothing more than the intentional doing of a wrongful act without legal justification or excuse, or, otherwise stated, the willful violation of a known right."); *See also Nordling v. N. States Power Co.,* 478 N.W.2d 498, 506 (Minn. 1991) (discussing distinctions in malice and "actual malice").

19. Here, even under a heightened actual malice standard, Carebourn's actions were willful and maliciously performed in bad faith. The language in the PO is straightforward and free from ambiguity. Carebourn knew of the PO, having negotiated and stipulated to it. Carebourn was reminded of its obligations under the PO and still refused to cooperate with discovery in relation to procedures set out in the PO. Carebourn nonetheless doubled-down on its retention and dissemination of the disputed documents, rather than follow the PO procedure for resolving any dispute over privilege or waiver.

20. Under Carebourn's approach, absent consequences, the PO—an Order Carebourn asked the Court to approve—becomes a mere suggestion for which Carebourn need at best seek forgiveness for violating rather than permission to obtain and keep the documents as the PO intended. Such conduct is wrong and must be sanctioned.

21. DarkPulse shall be given leave to submit a Rule 119 affidavit of their attorney's fees incurred in connection with their motion for sanctions.

22. **Enforcing the Protective Order.** The Court must also consider DarkPulse's request that the Court enforce the PO by requiring destruction/clawback of the documents it now identifies as privileged in its updated privilege log. Carebourn, in defense of its self-help exercised in advance of the Court addressing this issue, asserts that the documents are not privileged, at least anymore, due to DarkPulse's own actions.

23. DarkPulse asserts it has identified 2,410 documents that constitute attorney-client privileged communications concerning a variety of litigation matters. It is apparent that from the documents filed by Carebourn that at least some of them do, in fact, entail attorney-client privileged communications.

24. Setting aside a potential *in camera* consideration of all of the voluminous documents at issue to determine if each one is privileged, the issue arises as to whether DarkPulse has waived the privilege. As noted above, DarkPulse worked through an outside vendor to identify potentially responsive documents. An initial set of search terms identified a number of privileged documents. DarkPulse identified a second set of search terms for the vendor to use to hopefully suss out privileged documents. DarkPulse then apparently made no effort to review the final product to determine if privileged documents had been successfully culled out. DarkPulse blames the encroaching deadline for the failure. Just as Carebourn could have asked the Court to address the documents it had inadvertently received, DarkPulse could have requested a protective order if it needed more time to respond to discovery and Carebourn was being unreasonable. Instead, it appears DarkPulse rushed through the process and only a month later realized what it had produced to its litigation adversary after Carebourn attempted to use the documents against it.

25. Waiver of privilege occurs when the communication is voluntarily disclosed to a third party. *United States v. Hyles,* 479 F.3d 958, 971 (8th Cir.2007). Minnesota Rule of Evidence 502(b) provides that disclosure does not operate as a waiver if (1) the disclosure is inadvertent (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error, including if applicable following Minnesota Rule of Civil Procedure 26.02(f)(2) (which provides that a party notified by a producer that privileged document was produced must return, sequester, or destroy the information and not use it until the claim is resolved).

26. Carebourn asserts that DarkPulse's disclosure was not inadvertent or the subject of reasonable steps to prevent disclosure, citing *Ewald* and its analysis of the *Hydraflow* test. If a party asserts that disclosure was involuntary, courts in Minnesota federal court have determined whether an inadvertent disclosure constitutes waiver by considering the following factors: (1) the reasonableness of the precautions taken to prevent inadvertent disclosure in light of the extent of document production, (2) the number of inadvertent disclosures, (3) the extent of the disclosures, (4) the promptness of measures taken to remedy the problem, and (5) whether justice is served by relieving the party of its error. *See Ewald v. Royal Norwegian Embassy*, Civil No. 11–CV–2116 (SRN/SER), 2014 WL 1309095 (D. Minn. Apr. 1, 2014) (citing *Starway v. Indep. Sch. Dist. No. 625,* 187 F.R.D. 595, 597 (D.Minn.1999) (ADM/AJB); *Gray v. Bicknell,* 86 F.3d 1472, 1484 (8th Cir.1996); *Hydraflow, Inc. v. Enidine Inc.,* 145 F.R.D. 626, 637 (W.D.N.Y.1993)).

27. This approach would have governed this issue had the parties not specifically stipulated to a court order setting forth a different approach. Rule 502 recognizes that the Court may order that privilege is not waived by disclosure in connection with litigation before the Court, and that an agreement on the effect of disclosure is binding on the parties. Minn. R. Evid. 502(c), (d). Discussing the parallel Federal Rule of Evidence 502(d), courts have noted that the terms of a protective order can preempt the inadvertence/reasonableness test of 502(b). *See, e.g., Sleep No. Corp. v. Young*, No. 20-CV-1507 (NEB/ECW), 2021 WL 5644322, at *19 (D. Minn. Dec. 1, 2021) (Rule 502(d) protections applied to inadvertent production of evidence in conjunction with the language set out in the parties' Protective Order protecting privileged documents); *Team Express Distrib., LLC v. Junction Solutions, Inc.,* Civil No. SA-15-CA-00994-DAE, 2017 WL 10820159, at **6-7 (W.D. Tex. Aug. 30, 2017) (502(d) intended to enable court to issue order to expedite discovery without need for exhaustive pre-production reviews, then "can replace the directive of FRE 502(b)"); *United States v. United Health Grp., Inc.*, CV 16-8697 FMO (SSX), 2020 WL 10731257 (C.D. Cal. Nov. 9, 2020) (502(b) may be supplanted by protective orders that provide concrete directives that claw back occur, without requiring proof of inadvertence); *Royal Park Invests. SA/NV v. Deutsche Bank Nat'l Trust Co.*, 14-CV-04394 (AJN) (BCM), 2016 WL 2977175, at *3 (S.D.N.Y. May 20, 2016) (when protective order claw back provisions did not require the party demonstrate it took reasonable steps or promptly rectified its errors, as required by 502(b) and pre-502(b) caselaw, conduct must be judged under terms of protective order itself as required by 502(d)).

28. Here, the PO specifically protected privileged documents. There was no requirement in the stipulated clawback provisions that production be inadvertent, or that only those that were subject to reasonable levels of document handling were worthy of protection:

Handling of Protected Document. All Parties **are specifically afforded the**

**protections of Minnesota Rule of Evidence 502(d) and (e)** for any produced document that is or may reasonably be subject to a legally recognizable privilege (Protected Document). **The disclosure or production of Protected Document(s) by a producing Party** subject to a legally recognized claim of privilege, including without limitation the attorney-client privilege and the work-product doctrine, to a receiving Party, **shall in no way constitute the voluntary disclosure of such Protected Document(s), and the inadvertent disclosure or production of any Protected Document(s) in this action shall not result in the waiver of any privilege, evidentiary protection or other protection** associated with such Protected Document(s) as to the receiving Party or any third parties.

(Emphasis added.)

29. Despite acknowledging the documents, at least those it referenced in prior filings, appeared to be attorney-client communications, Carebourn also asserts that they would not be privileged Protected Documents because they are covered by the crime-fraud exception. The crime-fraud exception covers documents that are made in furtherance of a crime or fraud, and closely related to the fraud. *Levin v. C.O.M.B. Co.*, 469 N.W.2d 512, 515 (Minn. Ct. App. 1991). Application of the exception should not be based on a rigorous analysis, but on whether the communication was used to abuse the privilege. *Id.* "Mere allegations of wrongdoing are insufficient to warrant application of the exception." *Id.*

30. Simply put, Carebourn has not established that the disputed documents are evidence of an attempt to misuse the privilege to commit a fraud. The Court has already addressed this argument in part in denying Carebourn's argument for dispositive relief made in partial reliance on these documents.

## ORDER

1. DarkPulse's motion to enforce the protective order and for sanctions is GRANTED;

2. Carebourn Capital, L.P. and Chip A. Rice (the "Carebourn Parties") shall immediately destroy all copies of the 2,410 documents identified in DarkPulse's privilege log, attached as Exhibit 1 to the January 19, 2022 Declaration of Eric Benzenberg;

3. The Hennepin County Clerk shall designate the following documents filed by Carebourn in connection with its October 19, 2021 Rule 115.11 to the Court as "Confidential" such that they are no longer accessible by the public: Exhibit F, Exhibit J, Exhibit K, Exhibit L, Exhibit M, Exhibit N, Exhibit O, and Exhibit P;

4. The Hennepin County Clerk shall designate the following documents filed by Carebourn in connection with the November 15, 2021 Affidavit of Lee A. Hutton III as "Confidential" such that they are no longer accessible by the public: Exhibit B, Exhibit C, Exhibit H, Exhibit L, Exhibit W, Exhibit Y, Exhibit Z, Exhibit AB, and Exhibit AE;

5. The Carebourn Parties shall immediately take appropriate action to prevent further disclosure of the Protected Document filed with the December 30, 2021 Affidavit of Kyle P. Hahn

in the matter *SEC v. Carebourn Capital, L.P.* et al, Case No. 21-cv-02114 (D. Minn.), and the Carebourn Parties shall advise the Court within seven days of this Order of the actions taken and whether the Protected Document remains accessible to the public;

6.  The Court finds that the Carebourn Parties have violated the protective order in this matter in bad faith and that their actions were not substantially justified;

7.  DarkPulse is entitled to recover, and the Court hereby awards to DarkPulse, its fees and costs incurred in connection with its motion to enforce the protective order and efforts to request that the Carebourn Parties comply with such order. DarkPulse shall submit a Rule 119 affidavit substantiating its costs and fees within fourteen (14) days of this Order for the Court's consideration. Carebourn Parties may respond to the submission within twenty-one (21) days of this Order.

BY THE COURT:

Dated: April 14, 2022

_____
Patrick D. Robben
Judge of District Court