# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | CASE NO. 21-CV-2114(KMM/JFD) |
| Plaintiffs, | |
| CAREBOURN CAPTIAL, L.P., CAREBOURN PARTIES, LLC Relief Defendant, and CHIP ALVIN RICE, | |
| Defendants. | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF SANCTIONS AGAINST SECURITIES AND EXCHANGE COMMISSION

### INTRODUCTION[1]

Defendants Carebourn Capital, L.P., Carebourn Parties, LLC, and Chip Alvin Rice (hereinafter, "Defendants") petition this Court for sanctions against the Securities and Exchange Commission (hereinafter "Commission") in the general sense for unjust litigation practices against the Defendants. The Commission falsely presents to the court their motion to dismiss the case against the Defendants without prejudice from the prolonged and unwarranted litigation with the only reason being "policy change".  Indeed, the Commission provides no affidavits, memorandum, or any evidence for the policy change. Defendants contend that prior to the lawsuit, during the suit, prior to the appeal, and after, the Commission and their attorneys knew that the lawsuit against Defendants was disingenuous. Instead, the Commission pursed a multi-

---

[1] Defendants incorporate the arguments in their Memorandum in Opposition in Part to Dismissal Without Prejudice.

year scorched earth litigation that created significant legal fees, irreparable damages, and loss of bank accounts, and complete alteration of Defendants' life.

Defendants seek sanctions by way of attorney's fees for misconduct of the legal process from the Commission's protracted and arguably vindictive litigation practices against Defendants.

## BACKGROUND

Defendants have been in business for several decades without a single mark of securities wrongdoing. (Hutton Aff., Ex a ("Rice Dep.", 16:6-17:2. Dkt. 134-1).  In fact, the Commission admits that Defendants transactions here were all legal as the Commission only pursued a single count against Defendants. (ECF 1, Complaint). Therefore, the Court must conclude that Defendants were legitimate and a compliant entity in the financial sector. Due the litigation, Defendants reputation was forever altered when Defendants found themselves embroiled in a protracted legal battle initiated by the Commission.

For many years, the agency has pursued this litigation against Defendants based on allegations that, upon further scrutiny, lack sufficient legal grounding or at the very least has been vacated by the Order drafted by Judge Reed O'Conner in the Northern District of Texas. (Affidavit of Lee A. Hutton, III, Exhibit A, Judge Reed O'Conner Order.).  Indeed, the Court must consider at the very least the Commission's "change of policy" as evidence that the Commission itself self admits that their enforcement actions where "much to do about nothing" as they dismissed a series of "dealer" cases and amended remedies in cases that this court utilized to heavily penalize Defendants. (ECF 249)

Clearly, the dismissal has nothing to do about the law but simply a policy change through their own admission.  This "policy change" comes after Commission's public statements in court

filings against to punish Defendants arguing for significant damages against that they should be severe to maintain market integrity and protect the public from people like Defendants and to detour further behavior. (ECF 188). Now, the Commission feebly attempts to avoid from taking these statements back.

Now, Defendants use the same sword against the Commission in Defendants' request for sanctions and attorneys' fees because the Commission's motivation for the improper enforcement of dealer activity comes to an end without explanation or evidence.  However, this drawn-out conflict for the Defendants has not only diverted resources and attention but has also resulted in catastrophic irreparable losses for Defendants including the forfeiture of bank accounts, a $12,000,000 judgement and liens, loss of the ability to gain and keep insurance policies and forced forfeiture of assets such as stocks as part of the requested penalty by the Commission. (ECF 229). The court entered the following remedies judgment[2] against Defendants based upon the Commission's representations:

1.  Carebourn Capital, L.P. and Chip Rice ("Defendants") are permanently restrained and enjoined from violating, directly or indirectly, Section 15(a)(1) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78o(a)(1)], as a dealer [15 U.S.C. § 78c(a)(5)], by making use of the mails or any means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security (other than an exempted security pursuant to 17 C.F.R. § 240.15a-2 or commercial paper, bankers' acceptances, or commercial bills), unless the Defendants are registered with the Commission as a dealer, or associated with a registered dealer, in accordance with Exchange Act Section 15(b);

2.  Pursuant to Federal Rule of Civil Procedure 65(d)(2), the permanent injunction set forth in Paragraph 2 of this Order also binds the following who receive actual notice of the Final Judgment by personal service or otherwise: (a) Defendants' general partners, limited partners, members, managing members, officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendants or with anyone described in (a). 5. Defendants are barred, for a period of three years from the date of this Order, from participating in an offering of penny stock, including engaging in activities with a broker, dealer, or issuer for purposes of

---

[2] The Judgement was published by market participants and the SEC.

issuing, trading, or inducing or attempting to induce the purchase or sale of any penny stock.

3. (a) Defendants are jointly and severally liable for disgorgement of **$10,135,738.71**, representing net profits gained as a result of the conduct alleged in the Complaint, together with prejudgment interest thereon in the amount of **$950,173.40**, for a total of **$11,085,912.11**; and (b) Relief Defendant Carebourn Partners, LLC ("Relief Defendant") is liable for disgorgement of **$1,109,306.50,** representing the receipt of ill-gotten gains from Defendants' illegal conduct, together with prejudgment interest thereon in the amount of **$103,924.66,** for a total of **$1,213,231.16.**

4. Within ten days of entry of Judgment, Defendants must surrender for cancellation their remaining shares of stock of the issuers listed in Exhibit 1 of the SEC's motion for remedies in this case and surrender their remaining conversion rights under the convertible securities issued by the Issuers. Further, Defendants shall send copies of correspondence evidencing the surrender for cancellation of Defendants' remaining shares of the Issuers and their remaining conversion rights under the convertible securities issued by the Issuers to the SEC addressed to Charles J. Kerstetter, U.S. Securities and Exchange Commission, 175 W. Jackson Blvd., Suite 1400, Chicago, IL 60604.

Defendants surrendered shares that can never be returned. Defendants have a Treasury Lien in an amount more than $12,000,000. Defendant Rice lost his income and has had his life ruined by the case. The Commission does not care and only offers a "policy change" symbolic of the fruit cake delivered to a "friend" during the holidays. Therefore, punitive measures to restore equity and deter future malfeasance is warranted.

## **PROCEDURAL HISTORY**

This litigation has been ongoing for over six years, with significant developments including an appeal to the Eighth Circuit Court of Appeals, which vacated seven orders of the Minnesota District Court's order, including orders on liability and damages, and multiple failed attempts from the Commission to convince Defendants to withdraw their appeal and resolve the matter with prejudice with unfavorable conditions and stipulations for Defendants.

In 2019, the SEC commenced a multi-year investigation against Defendants. The investigation of this matter was conducted by Craig McShane, Timothy Stockwell, and Chris

White and was supervised by C.J. Kerstetter of the SEC's Chicago Regional Office. Attorney Timothy Stockwell was the lead attorney in the action. As a result of said investigation, on September 24, 2021, the SEC charged Defendants with acting as an unregistered securities dealer in connection with their buying and selling of billions of newly-issued shares of microcap securities, or "penny stocks," which generated millions of dollars for Carebourn Capital and Rice. (ECF 1, Complaint). Also named as a relief defendant is another Rice-controlled entity, Carebourn Partners, LLC. Id. The Commission's complaint alleged that Rice and Carebourn Capital's business model was to buy convertible promissory notes - a type of security - from penny stock issuers, convert the notes into newly issued shares of stock, and quickly sell those shares into the public market at a profit. Id. The complaint further alleged that, since January 2017, Rice and Carebourn Capital purchased more than 100 such notes from approximately 40 different penny stock issuers. Id. The complaint alleged that Rice and Carebourn Capital negotiated and received highly favorable terms for these notes, including terms that gave them deep discounts from the prevailing market price for the shares of counterparty penny stock issuers. Id. According to the complaint, by engaging in a regular business of buying convertible notes and then selling the resulting newly issued shares of penny stock companies' stock into the public market, Rice and Carebourn Capital operated as unregistered securities dealers and collectively generated more than $25 million in gross stock sale proceeds and over $13 million in net profits, with many deals still outstanding. Id.

In their complaint, filed in the U.S. District Court for the District of Minnesota, the Commission's main argument was based on the "Dealer Rule", a rule that was intended to arbitrarily broaden the definition of "dealer" and "government securities dealer" under the Securities Exchange Act of 1934. Under this rule, the Commission claimed that Defendants had failed to register with the Commission, join a self-regulatory organization, and adhere to federal

securities regulations, even when Defendants would only trade for their own accounts, not for customers. As such, the Commission alleged that Rice and Carebourn Capital violated the broker-dealer registration provisions of Section 15(a)(1) of the Securities Exchange Act of 1934. The complaint also alleged that Carebourn Partners received illicit proceeds from Rice and Carebourn Capital's violations. Id. The Commission's complaint sought injunctive relief, disgorgement and prejudgment interest, civil penalties, and a penny stock bar against Rice and Carebourn Capital. Id. Before the final judgement, Defendants argued that the Commission's complaint allegations on the "dealer rule" did not have proper notice or with Congressional input lacking due process. (ECF at 71, 8-14). In addition, Defendants argued they had no clients. (ECF at 71, 20-21.).

However, and not represented to the Court, the Commission was engaged in an internal dispute about the "dealer rule".  On February 6, 2024, Commissioner Mark Uyeda argued that their was not a unified agreement on the "dealer definition".  (Hutton Affidavit, Exhibit B, Commission Statement Mark Uyeda). On August 19, 2024, Commissioner Mark Uyeda issued a statement on the "dealer" definition generally express concern that the Commission was using enforcement actions to achieve rulemaking objectives, broadening the interpretation of who is a dealer in a way that was previously undisclosed to market participants. (Hutton Affidavit, Exhibit C, Statement by Commission Mark Uyeda). Commissioner Uyeda's statements suggest that this approach was unreasonable and potentially void for vagueness, and he supported withdrawing the appeal of the U.S. District Court's decision that vacated the Commission's "Dealer Rule". See Id. During these developments, the Commission nor Attorney Stockwell raised these important developments with the Court. Instead, the Commission and Attorney Stockwell argued that the Commission's definition of the rule was clear and without dispute.  This was a misrepresentation. At the very least, the Commission could have asked for a stay of the litigation, truthfully argue to the court

that the Commission believed that the enforcement was arbitrary and/or that the definition was not universally accepted within the organization.   Here, Defendants' arguments regarding lack of notice and application resume merit.

Regardless, on September 23, 2024, the Court entered a final judgement ordering permanent injunctions and penny stock bars against Carebourn Capital and Rice, as well as disgorgement and prejudgment interest against all Defendants. (ECF 230, Final Judgement).

On November 5, 2024, Defendants filed an appeal before the United States Court of Appeals for the Eight Circuit, to review seven court orders issued by the lower court between the years 2022 and 2024, including the SEC's Motion for Remedies and the Final Judgement against Defendants. (ECF 231, Notice of Appeal).

During this time, the Judge O'Conner ordered a vacatur that the Commission could not move forward with the enforcement of the dealer litigation. The Commission did nothing to pause the lawsuit and instead allowed Defendants to rack up more legal fees. Eventually, the Commission attempted to force Defendants into withdraw their appeal. Defendants were not swayed by the Commission's efforts and indicated that they would expect a response to their appeal, following procedural rules. The Commission did not respond to Defendants' appeal and instead, on June 5, 2025, the Commission filed a Motion to Remand requesting, amongst others, that the Eight Circuit remand the case for reconsideration "*in light of the SEC's voluntary dismissal of certain other enforcement actions alleging Section 15(a)(1) violations*".

On June 20, 2025, the Court of Appeals ruled the court vacated all the orders on appeal and ordered the that the case be "remanded back to the district court for further proceedings in light of the recent action taken by the United States Securities and Exchange Commission on May 22, 2025, as detailed in the Motion to Remand." (ECF 236, USCA JUDGMENT (electronic copy) as

to [231] Notice of Appeal to 8th Circuit, filed by Carebourn Partners, LLC, Carebourn Capital, L.P. The order(s) on appeal are hereby vacated. The case is remanded to the district court for further proceedings in light of the recent action taken by the United States Securities and Exchange Commission on May 22, 2025, as detailed in the Motion to Remand. (CLK) (Entered: 06/23/2025).

The Commission and Defendants agreed to file certain motions including this current request for sanctions. (ECF 245).

## **LEGAL STANDARDS**

Under Rule 11 of the Federal Rules of Civil Procedure, courts may impose "disciplinary sanctions to check abuses in the signing of pleadings."[3] For example, Rule 11 "emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable."[4] In relevant part, Rule 11(b) states,

> (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> . . . .
>
> (3) the factual contentions have evidentiary support or, if specifically, so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

A court may order a party to show cause why specific conduct has not violated Rule 11(b).[5] After "notice and a reasonable opportunity to respond," the court may impose appropriate sanctions against a party responsible for violating Rule 11(b).[6] Federal courts also have an inherent power

---

[3] Fed. R. Civ. P. 11 advisory committee's note to 1983 amendment.
[4] Id. advisory committee's note to 1993 amendment.
[5] Id. R. 11(c)(3).
[6] Id. R. 11(c)(1).

to sanction conduct that abuses the judicial process.[7] This inherent power includes the ability to enter orders protecting the integrity of court proceedings.[8] "These powers are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'"[9] Courts should ordinarily rely on the Federal Rules of Civil Procedure or a statute rather than their inherent power.[10] "But if in the informed discretion of the court, neither [a] statute nor the Rules are up to the task, the court may safely rely on its inherent power."[11]

Rule 11 requires an attorney to make a reasonable inquiry into the legal and factual basis of any motion or pleading before filing them in court.[12] The rule mandates that a district court impose sanctions on the attorney, the client, or both[13] upon finding that the filing is not grounded

---

[7] Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991).

[8] Farmer v. Banco Popular of N. Am., 791 F.3d 1246, 1255 (10th Cir. 2015).

[9] Chambers, 501 U.S. at 43 (quoting Link v. Wabash R.R. Co., 370 U.S. 626, 630–31 (1962)).

[10] Id. at 50.

[11] Id.

[12] FED. R. CIV. P. 11. The rule provides: Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated... The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation ....

[13] The rule states: If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee. Id. (emphasis added). The imposition of sanctions is mandatory upon a finding of a violation and is not left to the discretion of the district court. See *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir. 1985) ("By employing the imperative 'shall', we believe the drafters intended to stress the mandatory nature of the imposition of sanctions pursuant to the rule. Unlike statutory provisions that vest the district court with 'discretion' to award fees, Rule 11 is clearly phrased as a directive."). But see Schwarzer, Sanctions Under the New Federal Rule 11-A Closer Look, 104 F.R.D. 181, 200 (1985) (courts will not consider themselves bound by the mandatory language of the rule).

in fact, not warranted by existing law or is interposed for the purpose of delay.[14] The sanction

may consist of an order to pay the other party's reasonable attorney's fees.[15]

## **ARGUMENT**

The injustices suffered by Defendants because of the Commission's actions, including the

detrimental effects on the Defendant's financial stability and overall viability is irreparable. The

Court ordered remedies including damages in the amount of $12,000,000, permanent penny

stock bar, and release of shares that Defendant cannot get back. (ECF 229, Order on Remedies).

The harm caused to Defendant by the nature of the action is also problematic that any dismissal

would not repair.

.    I.    **The Vacutur Order Estops the Commission from pursuing a case against Defendant.**

A vacatur is a legal order that sets aside or annuls a prior court judgment, order, or

proceeding, essentially rendering it void or without effect. Derived from the Latin term meaning

"it is vacated", a vacatur can occur after a successful appeal, a formal request to the court, or in

specific contexts like vacatur relief for victims of human trafficking to remove records of their

crimes. See, e.g. *Monsanto Co. v. Geertson Seed Farms*, 130 S.Ct. 2743 (2010).

---

[14] A violation exists where after a reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is grounded in fact or law. *Eastway*, 762 F.2d at 254. The Advisory Committee Notes to the Rule's 1983 amendment state, "The standard is one of reasonableness under the circumstances." 97 F.R.D. 196, 198. The Advisory Committee Notes also list four factors that affect the reasonableness of the inquiry: (1) the length of time available for the signer; (2) whether the signer had to rely on client information as to the underlying facts; (3) whether the filing was based on a plausible view of the law; and (4) whether the signer depended on forwarding counsel or another member of the bar. 97 F.R.D. at 199. For a discussion of the reasonable inquiry standard see Note, Plausible Pleadings" Developing Standards for Rule 11 Sanctions, 100 HARV. L. RrV. 630, 642-43 (1987).

[15] See text of Rule 11, supra note 13. Although the imposition of sanctions may be mandatory, the type and amount of sanction are within the discretion of the district court. See Levin & Sobel, Achieving Balance in the Developing Law of Sanctions, 36 CATH. U. L. REV. 587, 600 (1987) (Courts award various types of sanctions including fines paid into the court for use of the court's time, publication of the offending attorney's name, as well as attorney's fees to the other party.).

On November 21, 2024, Judge Reed O'Conner entered an order vacating the Commission's enforcement of the "dealer rule". (See Affidavit of Lee Hutton, III, Exhibit A, Memorandum Opinion & Order.) The Commission appealed the decision but later voluntarily dismissed the appeal leaving the O'Conner order in effect.  Id. at Exhibit E, Stipulation to Dismiss Appeal. As such, the Order is the law.  Of note, the Plaintiffs in the case against the Commission were the same amicus group that were denied participation.  (ECF 176).

### a.  Background of Dealer Rule.

The United States Congress passed the Securities Exchange Act of 1934 ("The Act"). Since its inception, the Act required "dealers" to register with the Commission to become a member of a self-regulatory organization reporting certain securities transactions and comply with financial-responsibility organization.  The Act defined dealers as those "in the business of buying and selling securities…for their own accounts." 15 U.S.C. Section 78c(a)(5)(A). The case before Judge O'Conner concerned the Commission's attempt to dramatically expand the definition of dealer, with a novel interpretation of a 90-year-old statute that the Commission blankets all market participants.[16] See, Hutton Affidavit, Exhibit A, page 2.  Most concerning, the Commission scared their targets with a felony action.  Operating as an unregistered dealer under the Act is a felony.  15 U.S.C. Sections 78o(a)(1), 78ff. Defendants made similar arguments in their defense.

Judge O'Conner correctly pointed out that the Act's statutory text is silent on the proposed tests used by the Commission to establish dealer activity.  Id. Like Defendants, the Plaintiffs alleged that the Commission's view of the rule was without statutory authority under 5 U.S.C. Section 706(2)(C) that the Rule is arbitrary and capricious and contrary to law.  Id. at 4.

---

[16] The Commission made it clear to Defendants that they viewed a parent assisting their child with an e-trade would be in violation of the "dealer rule".

The case specifically analyzed the dealer definition and the Commission authority to enforce their version without congressional approval. The case further underpinned the notion that Congress did not upset the common law understanding that a dealer traditionally interacts with customers. Hutton Affidavit, Exhibit A at 12. Defendants do not have customers and the Commission knew it.

      **b.  Commission did not have authority to Enforce and Continues to Run roughshod over the responsibility to follow the law is an abuse of power.**

The Commission's mandate under the Act includes the enforcement of securities laws to protect investors and maintain fair markets. But Judge O'Conner held that the Commission's actions were in excess of their authority based on the text, history, and structure of the Exchange Act. (Hutton Affidavit, Exhibit A at 15.) The Commission exceeded its statutory authority and action was unauthorized. Id. at 16. The remedy was to vacate the Commission's actions. Id. Vacatur of the rule and the Commission's actions were rendered appropriate. Id.

Vacatur is the default remedy for unlawful agency action under the APA, as prescribed by 5 U.S.C.A. Section 706(2). The Fifth Circuit has emphasized that vacatur has nationwide effect and is not party-restricted, affecting all persons equally across judicial districts. *American Clinical Laboratory Association v. U.S. Food and Drug Administration*, 776 F.Supp.3d 554 (2025). In the context of the SEC's Dealer Rule, the vacatur issued by Judge Reed O'Connor in the Northern District of Texas nullified the rule, rendering it legally void. As such, the Commission lacks authority to enforce or implement the Dealer Rule unless and until the vacatur is stayed, reversed, or otherwise modified by a higher court. Continuing to pursue the rule in other jurisdictions could be seen as disregarding the vacatur order, potentially violating the APA and judicial precedent. Thus, the Commission's continued enforcement or implementation the Dealer Rule despite its vacatur is an act more than its statutory authority. The APA explicitly

directs courts to "set aside" agency actions found to be unlawful or beyond statutory limits, and such actions are considered void. *Texas v. United States Department of Homeland Security*, 756 F.Supp.3d 310 (2024). Agencies are bound by judicial orders vacating their rules, and failure to comply with such orders could result in further litigation or sanctions. Moreover, courts have held that vacated rules cannot be applied to anyone, as they are no longer legally effective. Id. Here, the Commission by their Rule 41(b)(2) filing foreshadows that they will defy the vacatur in the future. Most importantly, the court's orders in this matter were vacated and the Court should look at the Commission's complaint under the traditional dealer definition's climate meaning the Court can dismiss this case with prejudice on the pleadings in favor of Defendants.  The filing of the Rule 41(b)(2) by the Commission with the vacatur in effect is a blatant disregard of Judge O'Conner's decision and sanctionable. The Court must follow Judge O'Conner's Order.

But in Defendant's case, the Commission already overstepped its authority by initiating litigation that serves more to showcase regulatory power than to uphold the law. (Hutton Aff., Exhibit B, Statement by Mark Uyeda).  The Commission's decision to prolong this litigation avoiding Eighth Circuit review to assess the legality of its actions is indicative of an abuse of power. The Commission offers the excuse without evidence that they desire to "preserve resources". (ECF 249). In fact, the Commission avoids review to assess the legitimacy of the claims against Defendant signifies a troubling trend of evading judicial scrutiny. This raises concern not only about the Commission's commitment to due process but also about the regulatory overreach. The avoidance of a hearing at the District Court or Appellate Level implies an acknowledgment that the Commission's actions did not support the allegations, yet the agency continued its assault on Defendant.

Regardless, the stage of this case and the Commissions sudden change in "policy" coupled with the vacatur is compelling to order sanctions against the Commission. But the Defendants' case is blatantly distinguishable from the cited case the Commission uses to influence this Court that the reason for dismissal here is a "policy change". Here, Defendants have endured significant harmful effects from the judgment that the other "dismissed cases" cited by the Commission were not at the appellate stage in the process. Clearly, Defendants' case cannot be compared with other actions cited by the Commission.

The Commission's liability for continuing to pursue the vacated Dealer Rule in other jurisdictions would likely arise from acting in excess of its statutory authority and disregarding the legal effect of vacatur under the APA. Courts have consistently held that vacatur nullifies agency rules, rendering them void and unenforceable. Any attempt by the Commission to enforce or implement the Dealer Rule could expose the agency to legal challenges and potential sanctions.

### c. Defendant's Financial Losses are Excessive.

The consequences of the Commission's actions extend beyond financial losses. The prolonged litigation has resulted in Defendant's suffering irreparable harm to its reputation, market trust, and personal relationships. These intangible costs, compounded by the tangible financial losses, raise serious ethical questions about the Commission's role as a regulatory body.

Since the litigation, Defendants have suffered tremendously. Defendant Rice has lost his income, ability to find competitive insurance policies, inability to participate in the stock market, public ridicule, bank accounts, and ability to work. See Declaration of Chip Rice. Highland Bank closed all his accounts including his wife's account, and his has received notices from the Department of Treasury to immediately pay $12,000,000 making loans or simple daily living

difficult. Id. Defendant Carebourn has also suffered as the Order caused them to surrender valuable shares that are not able to clawback. Id. It is unknown how valuable those shares would be. Id. In addition, Defendants loaned hundreds of thousands of dollars that were not paid back by company borrowers because of this lawsuit. Id.

## II.    SANCTIONS AGAINST THE COMMISSION IS APPROPRIATE.

### a.  Legal Grounds for Sanctioning the Commission.

The law provides mechanisms for the sanctioning of government agencies that engage in misconduct or abuse their power. Given the extensive duration of litigation against Defendants, combined with the obvious lack of substantial evidence justifying the Commission's actions, there is a compelling case for sanctions based.  The arbitrary and capricious is the decision-making process appears to lack a rational basis, particularly in its refusal to engage in a judicial hearing. The behavior contravenes the principles established under the APA, which mandates reasoned decision-making.

The ramifications of the Commission's actions extend beyond Defendants. The financial markets depend on the integrity of regulatory bodies. By engaging in what can be construed as punitive litigation without just cause, the Commission not only harms Defendants but also erodes public trust in regulatory enforcement.

### b.  The Commissions Shall Reimburse Attorneys' Fees as Defendant was the Prevailing Party.

Considering the extensive detriment caused to Defendants due to the Commission's prolonged and unjust litigation, it is imperative that the court take action to sanction the Commission. Such a ruling would not only serve to rectify the injustices faced by Defendants but would also act as a critical deterrent against future overreaches by government agencies.

Upholding the principles of fairness, accountability, and due process is vital for maintaining the integrity of the regulatory framework that governs our financial markets.

The defendant may be entitled to recover attorney's fees under certain circumstances, depending on the legal framework governing the case and the specific facts surrounding the Commission's actions. The Equal Access to Justice Act (EAJA), codified at 28 U.S.C.A. Section 2412 provides a mechanism for prevailing parties in civil actions against the United States to recover attorney's fees, provided certain conditions are met. Below, the relevant legal principles and their application to the query are analyzed. The EAJA allows a prevailing party in a civil action against the United States to recover attorney's fees. To qualify as a "prevailing party," the defendant must obtain actual relief on the merits of their claim that materially alters the legal relationship between the parties by modifying the government's behavior in a way that directly benefits the defendant. See *Zheng Liu v. Chertoff*, 538 F.Supp.2d 1116 (2008). In *Liu*, Liu sought an award of attorney fees and costs of $16,087.79 under the Equal Access to Justice Act.  *Id.* "The EAJA provides that a prevailing party is entitled to an award of fees and expenses in any action brought by or against the United States 'unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." See 28 U.S.C. Section 2412(d)(1)(A); See *U.S. SEC v. Zahareas*, 374 F.3d 624, 626 (8thCir.2004).   The *Zahareas* case is example of granting attorneys' fees against the Commission meeting the criteria.

The EAJA provides that a prevailing party is entitled to an award of fees and expenses in any action brought by or against the United States "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." See 28 U.S.C. Section 2412 (d)(1)(A).  In *Pierce v. Underwood,* the Supreme Court defined

substantially justified as having a "reasonable basis both in law and fact," or being "justified in substance or in the main." Pierce, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed2d 490 (1988). But the Commissions position here cannot be substantially justified considering the internal discussions and admissions by Commissioner that their enforcement was arbitrary. Coupling that with the Judge O'Conner's order would prevent a genuine conclusion that the Commission's actions against Defendant were valid.

Further, the Commission is not exempt "from liability under the EAJA merely because it prevailed at some interim point in the judicial process." *Sierra Club v. Sec'y of Army*, 820 F.2d 513, 517 (1st Cir.1987). The fact that the district court in this case found for the Commission is a factor weighing in their favor, but the district court's judgment "is not sufficient and has been ***vacated***. As such, the Commission cannot point to the past judgments in and of itself, to show that the Commission's position was substantially justified." See *Davidson v. Veneman*, 317 F.3d 503, 507 (5th Cir.2003).

Rather, "[t]he most powerful indicator of the reasonableness of an ultimately rejected position is a decision on the merits and the rationale which supports that decision." See *Friends of Boundary Waters Wildnerss v. Thomas*, 53 F.3d 881, 885 (8th Cir.1995) (reversing the district court and awarding attorney's fees). Here, the Commission did not act reasonably in light of the internal disagreement of the dealer definition and arbitrary enforcement admissions. See Davidson, 317 F.3d at 506 (citing 28 U.S.C. Section 2412(d)(2)(D). The Commission bears the proof here. Still, the mere fact that the government advances a novel argument does not automatically insulate it from EAJA liability. See *Keasler v. United States*, 766 F.2d 1227, 1231 (8th Cir. 1985). In addition, the EAJA provides that the "United States shall be liable for such

fees and expenses to the same extent that any other party would be liable under the common law." 28 U.S.C. Section 2412 (b).

### c.    Commission Should Pay Fees Due to their Bad Faith.

The government may be liable for attorney's fees if it acted in bad faith. See Am. Hosp. Ass'n v. Sullivan, 938 F.2d 216, 219 (D.C.Cir.1991) "Bad faith has been broadly defined to include acts of 'obdurate obstinacy,' or conduct that has compelled the plaintiff to litigate recognized legal rights clearly owed." See *Haycraft v. Hollenbach*, 606 F.2d 128, 133 (6[th]Cir.1979). Attorney's fees can be awarded if the "bad faith (1) occurred in connection with the litigation, or (2) was an aspect of the conduct giving rise to the lawsuit." See *Am. Hosp. Ass'n*, 938 F.2d at 219.

Here, the Court can accept the undisputed findings by Judge O'Conner to conclude that the Commission's complaint served upon Defendants and the protracted litigation was unjustified and brought in bad faith. Throughout the course of the litigation, the Commission chose not to pause the litigation while they addressed the internal dispute regarding the enforcement or the understanding of the "dealer definition". Instead, the Commission pursued significant penalties and caused Defendants to have increased litigation costs. Sanctions and attorneys' fees are appropriate.

### d.    Defendants Meet the Standards Under the EAJA.

The goal of the EAJA is to remove the deterrent effect of having to pay attorney's fees to defend against unreasonable government action. See *SEC v. Comserv Corp*., 908 F.2d 1407, 1415 (8[th]Cir.1990). The EAJA provides for the award of attorney's fees if: (1) the person is a prevailing party; (2) the individual's net worth did not exceed $2,000,000 at the time the civil action was filed; and (3) the fees and expenses were "incurred by that party in [the] civil action"

in which it prevailed. 28 U.S.C. Section 2412 (d)(1)(A)-(2)(B). The EAJA standard is not stringent; "a plaintiff [must] receive at least some relief on the merits of his claim...." to be a prevailing party. See Hewitt v. Helms, 482 U.S. 755, 760, 107 S.Ct. 2672, 2675, 96 L.Ed.2d 654 (1987).

Defendants incurred significant defense costs starting with the investigation in 2019 until 2025 after the Commission decided to resolve this case with a Dismissal vacating the orders. See Rice Declaration. Defendants requested dismissal of these claims multiple times throughout the case. Defendants instead had to appeal the matter with the Commission hoping that they would have bankrupted Defendants before an appeal was taken. Because the Commission would have difficultly petitioned for a motion for relief like they did before Judge Analisa Torres in SEC v. Ripple Labs and with Defendants insisting on appellate review, the Commission pushed to vacate the orders and then dismiss. However, the Commission should have to compensate Defendants' attorney's fees and be sanctioned for bad faith conduct for the 5-year litigation. In all, Defendant Rice's net worth did not exceed $2,000,000. See Rice Declaration. In addition, Defendants incurred fees and expenses. Id. Also, Defendant Carebourn's net worth was below $7,000,000 qualifying Defendants for attorneys' fees.

The Court should award attorneys' fees to Defendant Rice and Defendant Carebourn under the Equal Access to Justice Act (EAJA) because the Commission's dismissal of the case after five years suggests that the government's position was not substantially justified. EAJA allows prevailing parties, including individuals and entities who successfully defend against government actions, to recover reasonable attorney fees and costs when the government's litigation position lacks substantial justification.

In conclusion, the Court should grant attorneys' fees to Defendants Rice and Carebourn under EAJA because they prevailed after the SEC's dismissal, and the government's prolonged litigation lacked substantial justification, warranting reimbursement for their legal expenses.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant attorneys' fees and costs along with penalties arising out of the Commission's bad faith in this litigation. In all the dealer rule enforced by the Commission is no longer tenable, but the Commission and Attorney Stockwell knew this at the time of filing and throughout the case.

**THE HUTTON FIRM, PLLC**

Dated: September 25, 2025

/s/ Lee A. Hutton, III
Lee A. Hutton, III (Atty No. 0327992)
SPS Tower
333 South Sixth Street
Suite 2150
Minneapolis, Minnesota 55402
Lhutton@thehuttonfirm.com
612-805-4619

*ATTORNEYS FOR DEFENDANTS*
CAREBOURN CAPTIAL, L.P.,
CAREBOURN PARTIES, LLC, Relief
Defendant, and CHIP ALVIN RICE

333 South Seventh Street
Suite 2150
Minneapolis, Minnesota 55402
Telephone: (612) 808-9444
lhutton@thehuttonfirm.com